<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HARRY ZAMOR,

        Petitioner,

    v.

STATE OF NEW JERSEY, et al.,

        Respondents.

Civil Action No. 12-3357 (JBS)

**OPINION**

**APPEARANCES**:

    HARRY ZAMOR, 138541C
    East Jersey State Prison
    Lock Bag R
    Rahway, New Jersey 07065
        *Petitioner Pro Se*

    SARA BETH LIEBMAN, Assistant County Prosecutor.
    UNION COUNTY PROSECUTOR'S OFFICE
    32 Rahway Avenue
    Elizabeth, New Jersey 07202
        *Attorneys for Respondents*

**SIMANDLE, Chief Judge**

    Harry Zamor filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging three judgments of conviction filed in the Superior Court of New Jersey, Union County, on November 8, 2002. The State filed an Answer with the record and Zamor filed a Reply. After carefully reviewing the arguments of the parties and the state court record, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

**A.  The Crimes**

Zamor challenges judgments entered on three indictments.  Indictments 01-11-1387 and 01-11-1388 arose from the burglary of Carol Ademoji in Elizabeth on September 9, 2001.  Indictment 01-11-1342 concerned drug charges arising from a police surveillance in Elizabeth on August 10, 2001.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  As Zamor has not attempted to rebut the factual findings of the Appellate Division, the Court will rely on those findings.

The Appellate Division found the following facts with respect to the August 10, 2001, drug charges.  See State v. Zamor, 2007 WL 3145340 (N.J. Super. Ct., App. Div., Oct. 30, 2007).  On that date Elizabeth police officers conducted surveillance of Jefferson Park and an apartment building located at 471 Madison Avenue after receiving numerous complaints from residents about narcotics sales in the area.  On four occasions during the night, the officers observed Zamor have a short conversation with a person who handed him money; after looking around, Zamor walked to the side of an alley at 471 Madison Avenue, picked up a white object, walked back to the person and handed over the white object.  The officers were able to see Zamor because they were about 60 feet away from the place where he retrieved the drugs, security lights on the building illuminated the area, and the officers had a clear line of sight and also used binoculars.  At some point, the officers called a patrol car and when the car arrived, Zamor ran into 530 Madison Avenue.  The officers arrested Zamor inside the building and recovered 113 vials of cocaine from the alley where Zamor stashed the drugs.  Zamor testified at trial that while he was on the

sidewalk, police officers who were driving around asked him to come over to the car. He testified that he told the officers that he had nothing to say and he walked into 530 Madison Avenue, but the officers kicked open the door and arrested him.

The Appellate Division described the facts found by the jury in the September 9, 2001 burglary case as follows. See State v. Zamor, 2007 WL 1308742 (N.J. Super. Ct., App. Div., May 7, 2007). At 2 a.m. on September 9, 2001, two friends of Carol Ademoji knocked on the door of her apartment at 430 Jefferson Avenue in Elizabeth. When she opened the door the two friends entered, followed by Zamor who was pushing them into the apartment. Zamor, who was carrying a silver revolver, checked everyone's pockets and demanded money. Ademoji went into her bedroom and gave Zamor $100. Ademoji's seven and eleven-year old children got up; Zamor pointed the gun at each child's head while he asked again where the money was. Zamor went into the living room where Ademoji's friend, Kalid, was sleeping. The two fought and Zamor hit Kalid in the head with the gun.

At about 2:30 a.m., two police officers responding to an incident report knocked on Ademoji's door and announced themselves as police officers. Ademoji told the officers that a man with a gun had just run out the rear door. The officers located Zamor hiding underneath two parked cars in a driveway behind the building. Two handguns were found within six inches of Zamor's hands. The officers took Zamor back to the apartment and all the occupants identified him as the person who had entered with a gun. Zamor testified at trial that, although he was in front of the apartment building at the time of the incident, he was speaking with Jean Raymond when he heard lights and sirens. He testified that he ran to an area near 430 Jefferson Avenue and hid between parked cars because the police frequently locked people up for no reason.

3

**B.      The State Court Proceedings**

In the burglary case, the jury found Zamor guilty of second-degree burglary, fourth-degree aggravated assault, third-degree unlawful possession of a firearm, and second-degree possession of a firearm for an unlawful purpose. Zamor was then tried and convicted by the same jury on a separate indictment charging second-degree possession of a weapon by a convicted felon. On November 8, 2002, the trial judge imposed an aggregate ten-year term with an 85% period of parole ineligibility on the convictions from the first trial and a consecutive nine-year term with three years of parole ineligibility on the conviction for possession of a weapon by a convicted felon. Zamor appealed and on May 7, 2007, the Appellate Division affirmed these convictions and remanded for resentencing pursuant to State v. Natale, 184 N.J. 458 (2005). See State v. Zamor, 2007 WL 1308742. On September 26, 2007, the New Jersey Supreme Court denied certification. See State v. Zamor, 192 N.J. 482 (2007) (table). On October 19, 2007, the trial court resentenced Zamor to the same sentences and Zamor did not appeal. See State v. Zamor, 2011 WL 3107760 *1 (N.J. Super. Ct., App. Div., July 27, 2011).

In the drug case, the jury found Zamor guilty of possession of cocaine, possession with intent distribute, and possession with intent to distribute within 500 feet of a public park. On November 8, 2002, the trial judge granted the State's motion to sentence Zamor to an extended term as a persistent offender (discretionary) and as a repeat drug offender (mandatory). The trial judge sentenced Zamor to 17 years in prison, with seven years of parole ineligibility, consecutive to the other sentences. Zamor appealed, and on October 30, 2007, the Appellate Division affirmed. See State v. Zamor, 2007 WL 3145340 (N.J. Super. Ct., App. Div., Oct. 30, 2007).

4

The New Jersey Supreme Court denied certification on February 5, 2008.  See State v. Zamor, 194 N.J. 269 (2008) (table).

On November 5, 2007, Zamor filed a petition for post-conviction relief challenging all three judgments of conviction.  On July 24, 2009, the trial judge denied relief without an evidentiary hearing.  (ECF No. 12-13 at 100.)  Zamor appealed and on July 27, 2011, the Appellate Division affirmed.  See State v. Zamor, 2011 WL 3107760 (N.J. Supr. Ct., App. Div., July 27, 2011).  The New Jersey Supreme Court denied certification on January 13, 2012.  See State v. Zamor, 209 N.J. 98 (2011) (table).

**C.  Procedural History of § 2254 Petition**

On May 28, 2012, Zamor signed his Petition for a Writ of Habeas Corpus and presumably handed it to prison officials for mailing to the Clerk.  (ECF No. 1.)  The Petition raises the following grounds:[1]

> Ground One:   INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL & ON APPEAL [OF BURGLARY CASE].
>
> (1) COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO PROSECUTOR['S] INFLAMMATORY COMMENTARY.
>
> (2) FAILING TO MAKE ARGUMENTS FOR ACQUITTAL.
>
> (3) FAILING TO OBJECT [TO] JURY['S] CONSIDERATION OF [THE] ABSENCE OF FINGERPRINT EVIDENCE.
>
> (4) FAILING TO REQUEST TO HAVE [THE] CONVICTION SANITIZE[D].

---

[1] The Court notified Zamor of his rights to amend the Petition to include all available federal claims in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and he did not do so.

> Ground Two:  THE CONVICTION[S] AGAINST DEFENDANT WERE NOT THE RESULT OF UNANIMOUS VERDICT[S AND] COUNSEL[’S] FAIL[URE] TO SUBMIT [THIS CLAIM] FOR REVIEW CONSTITUTE[D] INEFF[ECTIVE] ASSISTANCE OF APPELLATE COUNSEL.
>
> Ground Three:  PETITIONER WAS DENIED [THE] RIGHT TO [AN] IMPARTIAL JURY IN VIOLATION OF [THE] 6TH AMENDMENT TO [THE] CONSTITUTION WHEN [THE] TRIAL COURT USED [THE] JURY WHO SAT IN [THE] PREVIOUS PROSECUTION TO PROCEED WITH [THE] 2ND TRIAL OF PETITIONER FOR [A] SIMILAR CRIME.
>
> Ground Four:  [THE] CONVICTION FOR POSSESSION OF FIREARMS W[ITH]OUT FIRST HAVING OBTAINED A PERMIT, THOUGH DEFENDANT OWNS NO GUN, ABSENT IN RE WINSHIP REQUIREMENT [AND THE] FAIL[URE] TO CHALLENGE THAT UNCONSTITUTIONAL [CONVICTION] CONSTITUTE[S] INEFF[ECTIVE] ASSISTANCE.

(ECF No 1 at 6, 8, 9, 11.)

The State filed an Answer arguing that Zamor is not entitled to habeas relief on the merits. (ECF No. 12.)   Zamor filed a Reply.   (ECF No. 14.)

## II.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court adjudicated petitioner's federal claim on the merits,[2] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was

---

[2]  "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 135 S.Ct. 1372, 1376 (2015). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. See Pinholster, 131 S.Ct. at 1398.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. Woods, 135 S.Ct. at 1376 (quoting White v. Woodall, 134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id., 529 U.S. at 413.

7

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### III. DISCUSSION

**A.    Ineffective Assistance of Counsel Claims**

In Ground One, Zamor asserts that counsel was constitutionally ineffective in failing to object to the prosecutor's inflammatory comments, failing to argue for an acquittal, failing to object to the jury's being instructed not to consider the absence of fingerprint evidence, and failing to request to have his prior convictions sanitized. In Ground Four, Zamor asserts that counsel was constitutionally ineffective in failing to argue that he could not be convicted of possession of firearms without a permit without proof beyond a reasonable doubt that he owned a gun. The State argues that Zamor is not entitled to habeas relief on his ineffective assistance claims because the adjudication of those claims was not contrary to or an unreasonable application of Supreme Court precedent.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate

8

legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Id. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland at 693.[3] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." Hinton, 134 S.Ct. at 1083. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 1089 (quoting Strickland, 466 U.S. at 695).

Zamor raised the claims in Ground One in his post-conviction relief challenge to the burglary and related charges conviction. The Appellate Division, like the trial judge, rejected three of the claims because the Appellate Division had found no merit to the substance of the claims on direct appeal. Specifically, on direct appeal, Zamor argued that the prosecutor's

---

[3] The reasonable probability standard is less demanding than the preponderance of the evidence standard. See Nix v. Whiteside, 475 U.S. 157, 175 (1986); Baker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999).

9

statements during the burglary trial constituted prosecutorial misconduct, but the Appellate Division found: "Viewed in light of the considerable leeway given to prosecutors in closing argument, and the overwhelming evidence of guilt, including defendant being found moments after the alleged incident hiding underneath parked cars that were located directly behind 430 Jefferson Avenue, the multiple eyewitness identifications, as well as the inherent incredibility of defendant's testimony, we reject defendant's contention that the reference to him as a 'criminal' and a 'liar' resulted in such egregious prosecutorial impropriety as to rise to the level of plain error."  Zamor, 2007 WL 1308742 at *6.  Zamor also argued on direct appeal that the trial court improperly responded to the jury's question during deliberations as to whether fingerprints were found on the guns by stating that the jury could not speculate about fingerprints because no evidence was presented.  The Appellate Division found that the trial judge did not err, as the instructions as a whole made it clear that the State had the burden to prove all elements beyond a reasonable doubt and that Zamor was not obligated to prove innocence.  Id. at *4.  Zamor further argued on direct appeal that it was error to allow the jury to learn that Zamor had been convicted of absconding from parole because this knowledge might lead the jurors to find that he fled the scene of the burglary to avoid apprehension.  The Appellate Division found no error because Zamor revealed this conviction to the jury on direct examination and because the prior absconding offense was not similar to the offenses on trial.  Id. at 10.

Zamor does not challenge the Appellate Division's substantive adjudication of these claims in his habeas Petition, but he contends that counsel was deficient in not raising these objections at trial.  This Court finds that counsel was not constitutionally deficient in failing to object to the prosecutor's statements, failing to object to the judge's response to the jury's question about the

10

absence of fingerprints, and failing to request that Zamor's convictions be sanitized because "counsel cannot be deemed ineffective for failing to raise a meritless claim." Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (quoting Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000)).

Zamor also asserts in Ground One that counsel was constitutionally deficient in failing to argue for an acquittal in his opening and closing statements. On appeal from the denial of post-conviction relief, Zamor argued that counsel was deficient because "[t]rial counsel directly misrepresented what his client wanted from the jury - an acquittal." (ECF No. 12-13 at 22.) The Appellate Division found that counsel's opening statement was "of a type often given by defense attorneys at criminal trials" and that counsel correctly "explained to the jury the presumption of innocence, the State's burden to establish guilt beyond a reasonable doubt, and the fact that defendant had no burden to produce evidence in his own defense." Zamor, 2011 WL 3107760 at *4. The Appellate Division further found "competent performance by counsel in his role as defendant's attorney, and no basis in either counsel's openings or closings for appeal. That counsel was ultimately unsuccessful in obtaining verdicts exonerating defendant does not establish that he was ineffective in a constitutional sense." Id. at *5. This Court holds that the Appellate Division's adjudication of Zamor's claim that counsel was constitutionally deficient in failing to ask for an acquittal was not contrary to, or an unreasonable application of Strickland's deficient performance prong. Moreover, given the eyewitness identifications of Zamor by all persons present during the incident, Zamor has not shown that there is a reasonable probability that the jury would have acquitted him of charges if counsel had directly asked them to acquit him. Accordingly, Zamor is not entitled to habeas relief on Ground One.

11

Zamor asserts in Ground Four that counsel was deficient in failing to argue that he could not be convicted of possession of firearms without a permit without proof beyond a reasonable doubt that he owned a gun. Zamor raised this ground on post-conviction relief in his pro se supplemental brief. The Appellate Division rejected the claim as follows:

> Defendant argues additionally that counsel was ineffective in failing to claim on appeal that he could not have been found guilty of unlawful possession of a weapon because he asserted at trial that he did not own one. However, the State demonstrated at trial that, at the time defendant was discovered beneath the cars, two guns were under his possession and control. N.J.S.A. 2C:2–1c (defining possession; State v. Morrison, 188 N.J. 2, 14 (2006) (describing three forms of possession); State v. Brown, 80 N.J . 587, 597–98 (1979) (finding ownership not dispositive of possession). Whether defendant owned the guns was, in the circumstance, immaterial. Accordingly, defendant's argument lacks merit.

Zamor, 2011 WL 3107760 at *6.

Again, because counsel cannot be deficient for failing to raise a meritless claim, Zamor is not entitled to habeas relief on Ground Four.

**B.    Claim that Jury Was Not Unanimous**

Zamor argues in Ground Two that the jury in each trial was not unanimous and that counsel in both cases was deficient in failing to raise this issue on direct appeal. The trial court and Appellate Division rejected this claim as unsupported by the record:

> The transcript of the burglary trial discloses responses by the jury foreperson as to the jury's verdict on each count. With respect to all but the charge of armed robbery, the foreperson announced that the jury had found defendant to be guilty and that the verdict was unanimous. The jury was then polled, and although the results of the polling were not transcribed, the judge pronounced the polling to have been "unanimous." The same procedure was employed in connection with defendant's drug trial, with the same result. As a consequence, we find no basis for defendant's challenge to the verdicts and reject the argument that appellate counsel was ineffective in failing to pursue a similar argument on appeal.

Zamor, 2011 WL 3107760 at *5.

12

This Court must presume the correctness of the Appellate Division's factual finding that each jury's verdict was unanimous.  See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.")  Zamor has not rebutted the presumption by clear and convincing evidence, and he has not shown that the Appellate Division's adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," as required to obtain habeas relief under 28 U.S.C. § 2254(d)(2).  See Miller-El v. Dretke, 545 U.S. at 240 (holding that a district court must "presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'"); Rountree v. Balicki, 640 F.3d 530, 541-42 (3d Cir. 2011) (habeas court is "bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.") (quoting Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)).  Accordingly, Zamor is not entitled to habeas relief on Ground Two.

**C.     Claim that Jury Was Not Impartial**

In Ground Three, Zamor asserts that he was denied an impartial jury in violation of the Sixth Amendment because the jury that tried and convicted him in the burglary case then tried and convicted him in the possession of a weapon by a convicted felon case.  Zamor raised this Sixth Amendment claim in his petition for post-conviction relief.  The Appellate Division rejected the claim on the ground that the trial court properly followed the procedures established by the New

13

Jersey Supreme Court in State v. Ragland, 105 N.J. 189 (1986).  See Zamor, 2011 WL 3107760 at *6.

In Ragland, the trial court severed the charge of possession of a weapon by a convicted felon from charges of conspiracy to commit armed robbery, unlawful possession of a weapon, and unlawful possession of a weapon without a permit in order to avoid prejudice to defendant.  After the jury's verdict in the trial of the robbery and related charges, the same jury tried the charge of possession of a weapon by a convicted felon.  The trial judge instructed the jury that, if the jury finds that the defendant was previously convicted of the crime of robbery and that he was in possession of a sawed-off shotgun, as " indicated" by the jury, then the jury must find him guilty of possession of a weapon by a convicted felon.  See Ragland, 105 N.J. at 192.  The New Jersey Supreme Court held that, when a defendant is charged at the same time with unlawful possession of a weapon and possession of a weapon by a convicted felon, the two charges must be tried separately to avoid prejudicing the defendant by presenting evidence that defendant is a convicted felon.  The Ragland court further held that the same jury that found defendant guilty of unlawful possession of a weapon may sit sequentially at a new trial of the charge of possession by a convicted felon, provided "the jury [is] instructed in no uncertain terms to consider anew the evidence previously admitted but to disregard completely its prior verdict."  Id. at 195.  "What is needed in such a matter is a strong instruction to the jury to disregard its prior verdict of possession . . . , advising the jury that it is the State's burden to prove that fact beyond a reasonable doubt, allowing the jury, however, to consider the evidence that had previously been brought before it on the possession charge."  Id. at 195-96.

This Court is required to presume the correctness of the Appellate Division's factual finding that the trial judge in Zamor's case followed the procedure required by Ragland.  See 28 U.S.C. § 2254(d)(2).  In essence, Zamor claims in Ground Three that his trial for possession of a weapon by a convicted felon by the same jury violated his right to an impartial jury under the Sixth Amendment, even though the jury was instructed in the second trial in accordance with the requirements of Ragland.

The Sixth Amendment of the United States Constitution provides that "the accused shall enjoy the right to . . . trial by an impartial jury."  U.S. Const. amend. VI.  "'The theory of our [trial] system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print.'"  Skilling v. United States, 561 U.S. 358, 378 (2010) (citation omitted).  "It is not required, however, that the jurors be totally ignorant of the facts and issues involved."  Irvin v. Dowd, 366 U.S. 717, 722 (1963).  "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Id. at 723.  As the Supreme Court explained in a § 2254 case challenging a conviction where a juror had applied for a job with the prosecutor's office during the trial, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  Smith v. Phillips, 455 U.S. 209, 215 (1982).  Accordingly, the rule under Supreme Court precedent is that a juror need not be set aside unless the challenger shows that "the nature

15

and strength of the opinion formed are such as in law necessarily . . . raise the presumption of partiality." Irwin, 366 U.S. at 723 (quoting Reynolds v. United States, 98 U.S. 145, 157 (1878)); see also Government of the Virgin Islands v. Williams, 476 F.2d 771 (3d Cir. 1973) ("Since a juror who is regularly drawn and selected is presumed, in the absence of some showing to the contrary, to be unbiased and otherwise qualified and competent to serve and since . . . the mere fact of service in previous similar cases involving some of the same witnesses does not of itself amount to such a showing, it necessarily follows that a defendant challenging a juror on that ground must show by some evidence, normally obtained on voir dire, the probability of the actual existence of bias.").

The Court notes that in Leonard v. United States, 378 U.S. 544 (1964), the Supreme Court reversed a federal conviction where the defendant was tried in succession and convicted by different juries and the jury in the first case "announced its guilty verdict in open court in the presence of the jury panel from which the jurors who were to try the second case . . . were selected." Id. at 544. The Solicitor General acknowledged in Leonard that "[p]rospective jurors who have sat in the courtroom and heard a verdict returned against a man charged with crime in a similar case immediately prior to the trial of another indictment against him should be automatically disqualified from serving at the second trial, if the objection is raised at the outset." Id. at 545. In reversing, the Supreme Court simply stated: "We agree that under the circumstances of this case the trial court erred in denying petitioner's objection." Id.

Leonard does not even suggest that the procedures established by the New Jersey Supreme Court in Ragland violate the Sixth Amendment, as Leonard did not rely on the Sixth Amendment and the case had nothing to do with severance of a charge for possession of a weapon by a convicted felon from trial of a charge for unlawful possession of a weapon to avoid prejudice to

16

defendant; nor did the case involve successive trials before a jury properly instructed.  See, e.g., Moore v. Parker, 425 F.3d 250, 257 (6th Cir. 2006) (holding that Leonard did not clearly establish under § 2254(d)(1) that a jury possessing knowledge of a defendant's guilt must be disqualified from sentencing because "the Leonard Court limited that decision to its facts").

Here, Zamor has not shown that the Appellate Division's adjudication of his Sixth Amendment claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" and he is not entitled to habeas relief on Ground Three.  Davis v. Ayala, 135 S.Ct. 2187, 2199 (2015) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

### D. Certificate of Appealability

Zamor has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).  See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV. CONCLUSION

This Court denies the Petition with prejudice and denies a certificate of appealability.

                                                  s/ Jerome B. Simandle  
                                                  **JEROME B. SIMANDLE**  
                                                    **Chief Judge**

Dated:    **August 31, 2015**